IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

OCT 2 2 2003

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

| | | |
|---|---|---|
| ISABEL SOLIS and TRISHA HOLLOWAY, on behalf of themselves and on behalf of all others similarly situated, | § § § § § | |
| Plaintiffs, | § § | Civil File No. 3:03CV-00618-L (AH) |
| v. | § § § | [Wage/Hour - Fair Labor Standards Act] |
| HOTELS.COM TEXAS, INC., HOTELS.COM, L.P., DAVID LITMAN, ROBERT DIENER, and SANDRA D'ARCY, | § § § § § § | [Collective Action] [Jury Demanded] |
| Defendants. | § § | |

---

## BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

---

JONES & ASSOCIATES, P.C.
James A. Jones
(TX Bar No. 10908300)
Christopher L. Green
(TX Bar No. 24032372)
5015 Tracy, Suite 100
Dallas, TX 75205
(214) 219-3456
(214) 219-9309 (fax)

**ATTORNEYS FOR PLAINTIFF**

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    Defendants Are Not Entitled to Summary Judgment . . . . . . . . . . . . . . . . . . . . . . 8

        1.    Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2.    Plaintiffs have demonstrated genuine issues of material fact
               regarding fraud in the inducement. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        3.    Plaintiffs have demonstrated genuine issues of material fact
               regarding the validity of the time records upon which the
               DOL waiver calculations are based. . . . . . . . . . . . . . . . . . . . . . . . . . 12

        4.    Plaintiffs have demonstrated genuine issues of material fact
               regarding whether the DOL's calculations improperly violate
               the DOL's own regulations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        5.    "Payment in full" does not and cannot mean any amount determined
               or approved by the DOL, no matter what. . . . . . . . . . . . . . . . . . . . . . 17

               a. "Payment in full" means full payment of the overtime due. . . . . . . . . 17

               b. Even if the Walton Court is correct in its interpretation of the
                  phrase, "payment in full," that interpretation cannot be stretched
                  to mean any amount determined by the DOL, no matter what. . . . . . 18

        6.    Defendants are not entitled to a Portal-to-Portal defense. . . . . . . . . . . . . 19

               a. The so-called Portal-to-Portal defense does not apply to
                  § 216(b) waivers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

               b. Even if the Portal-to-Portal defense does apply to § 216(b) waivers,
                  Hotels.com cannot claim that defense in this case. . . . . . . . . . . . . . 21

IV.  ALTERNATIVE RULE 56(F) MOTION FOR CONTINUANCE . . . . . . . . . . . . . . . . . . 22

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Anness v. United Steel Workers of America*, 707 F.2d 917 (6th Cir. 1983) . . . . . . . . . . . . . . 19, 20

*Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bowen v. GDMFC of Texas, Inc.*, 1999 U.S. Dist. LEXIS 3824
(N.D. Tex. March 22, 1999) (Buchmeyer, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Brumfield v. Jones*, 849 F.2d 152 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Burke v. Mesta Machine Co.*, D.C.W.D.Pa.1948, 79 F.Supp. 588 . . . . . . . . . . . . . . . . . . . . . . . 21

*Cash v. Conn Appliances, Inc.*, 2 F. Supp 2d 884 (E.D. Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . 15

*Castillo v. Case Farms of Ohio, Inc.*, 96 F. Supp. 2d 578 (W.D. Tex. 1999) . . . . . . . . . . . . . . 15

*Gardner v. Hill*, 195 F.Supp. 2d 832 (E.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Giannini v. Standard Oil Company*, D.C.N.D.Ind.1955, 130 F.Supp. 740 . . . . . . . . . . . . . . . . 20

*Giardina v. Ruth U. Fertel, Inc.*, 2001 U.S. Dist. LEXIS 21804
(E.D. La. December 17, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*EEOC v. The Baltimore & Ohio Railroad Co.*, 557 F.Supp. 1112 (D. Md. 1983) . . . . . . . . . . . 22

*Erickson v. Newmar Corp.*, 87 F.3d 298 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Heavenridge v. Ace-Tex Corp.*, 1993 U.S. Dist. LEXIS 21129
(E.D. Mich. September 3, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19, 20

*Henchy v. City of Absecon*, 148 F.Supp. 2d 435 (D.N.J. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Mion v. Aftermarket Tool & Equip. Group*, 990 F. Supp. 535 (W.D. Mich. 1997) . . . . . . . . 9, 18

*Reeves v. Sanderson Plumbing Prods., Inc.* 120 S.Ct. 2097 (2000) . . . . . . . . . . . . . . . . . . . . . 7, 8

*Russell v. McKinney Hospital Venture*, 235 F.3d 219 (5th Cir. 2000)(King, Chief J.) . . . . . . . . . 7

*Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Spring v. Washington Glass Co.*, 153 F.Supp. 312 (W.D. Pa.) . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Usery v Godwin Hardware, Inc.*, 426 F Supp 1243 (1976, WD Mich) . . . . . . . . . . . . . . . . . . . . 20

*Walton v. United Consumers Club*, 786 F.2d 303 (7th Cir. 1986) . . . . . . . . . . . . . . . . . 9, 17, 18

## FEDERAL STATUTES

29 U.S.C. § 207(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 U.S.C. § 216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17, 19, 20, 22

29 U.S.C. § 259. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Portal-to-Portal Pay Act, 29 C.F.R. § 790.19(c), 12 Fed.Reg. 7655 . . . . . . . . . . . . . . . . . . . 21, 24

## FEDERAL REGULATORY PROVISIONS

29 C.F.R. § 778.104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 C.F.R. § 778.110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 C.F.R. § 778.114. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

## FEDERAL RULES OF CIVIL PROCEDURES

Fed.R.Civ.P. 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 22

## STATE RULES OF TEXAS

Rule 4.01(a) of the Texas Disciplinary Rules of Professional Conduct . . . . . . . . . . . . . . . . . . . 16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ISABEL SOLIS and TRISHA HOLLOWAY, on behalf of themselves and on behalf of all others similarly situated, | § § § § § § | |
| Plaintiffs, | § § | Civil File No. 3:03CV-00618 |
| v. | § § | [Wage/Hour - Fair Labor Standards Act] |
| HOTELS.COM TEXAS, INC., HOTELS.COM, L.P., DAVID LITMAN, ROBERT DIENER, and SANDRA D'ARCY, | § § § § | [Collective Action] [Jury Demanded] |
| Defendants. | § § | |

## BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFFS' ALTERNATIVE MOTION FOR RULE 56(f) CONTINUANCE

Plaintiffs, in response to Defendants' Motion for Partial Summary Judgment, hereby file their response to such Motion and would show the following:

### I. INTRODUCTION

Obviously dissatisfied with this Court's ruling on Plaintiffs' Motion for Notice, in which this Court authorized the sending of notice to those persons who had previously signed waivers, Defendants now attempt to end-run that ruling by filing a Motion for Partial Summary Judgment which would reach not only the Opt-In Plaintiff who seeks to represent this group, but all members of that group who are not even yet before this Court. Defendants would have this Court do so, not only before any of these persons are before the Court, but before any discovery has been conducted regarding the validity of the waivers.

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** – Page 1

Defendants' argument can be summed up thusly: As a matter of law, once a person signs a DOL-supervised waiver form, that person can never seek to invalidate that form no matter what the factual circumstances under which that form was signed. No matter if the signing of the waiver was fraudulently induced. No matter if the amount determined due was based on fraudulent time records. No matter if the spreadsheet utilized to calculate the amounts due violated DOL regulations in two significant respects, both of which had the necessary impact of significantly reducing the amount determined to be due. Defendants' position is wrong. In this case of first impression, genuine issues of material fact exist as to each of the above-stated issues which preclude the summary judgment Defendants seek.

## II.    FACTUAL BACKGROUND

A.    Hotels.com is the largest specialized provider of discount hotel accommodations over the Internet. [Jones Dec., ¶ 8 (Pl. App. 2); Defendants' First Amended Answer, Dkt. 44, ¶ 4].

B.    Hotels.com operates three call centers in the United States – one in Dallas, Texas; one in Fort Worth, Texas; and one in Pharr, Texas. [Defendants' First Amended Answer, Dkt. 44, ¶ 4].

C.    Prior to December 16, 2002, Hotels.com had a corporate policy that required that full-time non-exempt employees work a nine-hour shift, five days a week.[1] [Pegues-Bookman Dec., ¶¶ 6-7 (Pl. App. 15-16); Lyons Dec., ¶ 7 (Pl. App. 17); Judd Dec., ¶¶ 6-7 (Pl. App. 19); Solis Dec., ¶¶ 7-8 (Pl. App. 21- 22); Wardrop Dec., ¶¶ 6-7 (Pl. App. 24); Thomas Nelson Dec., ¶¶ 6-7 (Pl. App. 28); Engberg Dec., ¶¶ 7-8, 12, Exhs.A, B, C (Pl. App. 30-34); Elmore Dec., ¶¶ 7-8 (Pl. App. 35-36); Espino Dec., ¶¶ 7-8 (Pl. App. 37-38); Holloway Dec., ¶¶ 7-8 (Pl. App. 39); Janelle Nelson Dec., ¶¶ 6-7 (Pl. App. 42)]. During this nine-hour shift, employees were allowed a fifteen-minute

---

[1]    Apparently, in the Pharr call center some employees were scheduled for eleven hours a day, four days a week. [Gil Dec., ¶¶ 12-15 (Pl. App. 27)]. These employees were still not paid for two fifteen-minute breaks each day. [*Id.*].

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 2**

rest period during the first half of their shift, a thirty-minute lunch break and a fifteen-minute rest period during the second half of their shift. *Id.*

D. Employees working a nine-hour shift were paid for only eight hours. [Pegues-Bookman Dec., ¶¶ 8-9 (Pl. App. 16); Lyons Dec., ¶¶ 8-9 (Pl. App. 17-18); Judd Dec., ¶¶ 8-9 (Pl. App. 20); Solis Dec., ¶¶ 9-10 (Pl. App. 22); Wardrop Dec., ¶¶ 8-9 (Pl. App. 24); Thomas Nelson Dec., ¶¶ 8-9 (Pl. App. 28-29); Engberg Dec., ¶¶ 9-10 (Pl. App. 31); Elmore Dec., ¶¶ 9-10 (Pl. App. 36); Espino Dec., ¶¶ 9-10 (Pl. App. 38); Holloway Dec., ¶¶ 9-10 (Pl. App. 39-40); Janelle Nelson Dec., ¶¶ 8-9 (Pl. App. 42)].

E. In a clear and blatant violation of the FLSA, Hotels.com's non-exempt employees were not paid for their two fifteen minute rest periods. [Pegues-Bookman Dec., ¶ 8 (Pl. App. 16); Lyons Dec., ¶ 8 (Pl. App. 17); Judd Dec., ¶ 8 (Pl. App. 20); Solis Dec., ¶ 9 (Pl. App. 22); Wardrop Dec., ¶ 8 (Pl. App. 24); Thomas Nelson Dec., ¶ 8 (Pl. App. 28); Engberg Dec., ¶ 9 (Pl. App. 31); Elmore Dec., ¶ 9 (Pl. App. 36); Espino Dec., ¶ 9 (Pl. App. 38); Holloway Dec., ¶ 9 (Pl. App. 39); Janelle Nelson Dec., ¶ 8 (Pl. App. 42)].

F. Effective December 16, 2002, Hotels.com adjusted its rest period policy. However, instead of adjusting its policy to properly pay its non-exempt employees for their two fifteen-minute rest periods, Hotels.com simply eliminated the rest periods. [Engberg Dec., ¶ 12, Exhs. A,B,C (Pl. App. 31-34)].

G. Additionally, during the three years preceding the filing of this lawsuit, Hotels.com had a policy of not allowing employees to work overtime not specifically mandated by the employer. [Wardrop Dec., ¶¶ 13-16 (Pl. App. 24-25); Janelle Nelson Dec., ¶¶ 11-14 (Pl. App. 42)].

H. Hotels.com enforced this no non-mandatory overtime policy by having supervisors "adjust" the time records of any employee whose time records showed overtime worked. The time

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 3**



records of any employee whose time records showed that they worked in excess of 40 hours in a week were edited to reflect only 40 hours. [ *Id.*].

I.      Supervisors had to "adjust" the hours of employees on a regular basis each pay period.  [*Id.*].

J.      Employees would work overtime for a variety of reasons.  Sometimes employees were required to be at work early.  If they clocked in before the scheduled start of their shift and began working before that time, their time records were "adjusted" to reflect that they had clocked in at their scheduled start time.    [Pegues-Bookman Dec., ¶ 12 (Pl. App. 16); Solis Dec., ¶ 13 (Pl. App. 22);  Espino Dec., ¶ 11 (Pl. App. 38);  Holloway Dec., ¶ 11 (Pl. App. 40)].    Similarly, employees would sometimes have to stay past the scheduled end of their shift to complete a call that had begun prior to the end of the shift.  When this occurred, their time records were "adjusted" to reflect that they had clocked out at their scheduled stop time. [Pegues-Bookman Dec., ¶ 12 (Pl. App. 16);  Solis Dec., ¶ 12 (Pl. App. 22);  Wardrop Dec., ¶ 12 (Pl. App. 24)].    Some non-exempt employees were required by their supervisors and/or their job duties to work past their scheduled stop time.  Their time records were "adjusted" to delete this overtime.    [Janelle Nelson Dec., ¶ 14 (Pl. App. 42)].   Some employees were required to be at the office an hour prior to their scheduled start time to attend weekly meetings.  The employees were not allowed to clock in until their scheduled start time and were not paid for these meeting times. [Engberg Dec., ¶ 13 (Pl. App. 31)].

K.      Hotels.com did not pay their non-exempt employees for any of this non-mandatory overtime. [*Id.*].

L.      In March 2003, Plaintiffs Isabel Solis and Trisha Holloway filed the present lawsuit, on behalf of themselves and behalf of all others similarly situated, to recover unpaid overtime.

M.      On or about April 10, 2003, lead counsel for Plaintiffs, James A. Jones, received a telephone call from one of the counsel representing Hotels.com, Julie Buffington. Ms. Buffington stated to Mr. Jones that Hotels.com needed an extension of sixty (60) days in which to answer because she "had just received this file," and she "apparently ha[d] three separate locations at which to investigate these allegations."   Based upon this representation and upon the agreement of Hotels.com to toll the statute of limitations for sixty (60) days for those persons who ultimately opted into this suit, Plaintiffs granted the requested extension. [Jones Dec., ¶ 3 (Pl. App. 1)].

N.      The representations of Ms. Buffington to obtain an extension of Hotels.com's answer date were false. [Jones Dec., ¶ 4 (Pl. App. 2)].

O.      Indeed, apparently the Department of Labor had been investigating Hotels.com since at least December 2002. Ms. Buffington's firm was involved in that investigation, which apparently began at the Pharr, Texas location, since at least January 2003.   [Jones Dec., ¶ 5, Exh. A (Pl. App. 2, 3-13)].

P.      The reason for Ms. Buffington's subterfuge became clear in the days prior to Hotels.com's extended answer date. Just days prior to the date by which Hotels.com had been given an extension to answer based upon the false representations of Ms. Buffington, Hotels.com employees began being called into an office one by one and being presented with a check and a DOL Form WH-58 release.   [Jones Dec., ¶ 6 (Pl. App. 2); Judd Dec., ¶ 11 (Pl. App. 20); Wardrop Dec., ¶ 17 (Pl. App. 25); Janelle Nelson Dec., ¶ 15 (Pl. App. 42)].

Q.      Ms. Buffington's subterfuge was clearly intended to give Hotels.com and her firm time to complete the process of obtaining DOL releases prior to the time that Plaintiffs could get notice issued to the putative collective action members. Ms. Buffington and Hotels.com knew full well that, were Hotels.com's non-exempt employees aware of the pendency of this suit and had they

had access to Plaintiffs' counsel (as they would as a result of notice), many if not most of these employees would not have accepted these woefully inadequate settlement amounts. As a result of the false representations of Ms. Buffington, however, Hotels.com's employees were not afforded this opportunity. Instead, they were, as Ms. Buffington intended, easy prey.

R.    The checks distributed to employees, along with checks mailed to former employees, were for amounts that represented only pennies on the dollar of what these employees were owed in overtime over the prior two years. [Pegues-Bookman Dec., ¶ 13 (Pl. App. 16); Judd Dec., ¶ 12 (Pl. App. 20); Wardrop Dec., ¶ 17 (Pl. App. 25); Engberg Dec., ¶ 14 (Pl. App. 31); Elmore Dec., ¶ 12 (Pl. App. 26); Espino Dec., ¶ 12 (Pl. App. 38); Holloway Dec., ¶ 12 (Pl. App. 30); Janelle Nelson Dec., ¶¶ 15-16 (Pl. App. 42-43)]. Plaintiffs can only assume that these absurdly low amounts were the result of the DOL having unwittingly relied on the fraudulent time records of Hotels.com and on the fact that the spreadsheet utilized to calculate these amounts violated DOL regulations in two significant respects – discovery will, of course, tell this out.

S.    The amounts due each of the class members was calculated by Hotels.com on spreadsheets provided by the DOL investigator. [Wilcox Decl. at ¶9 (Def. App. 003)]. This spreadsheet, however, violated DOL's own regulations in two significant respects. First, the spreadsheet calculated overtime by averaging two workweeks and measuring overtime as hours worked in excess of 80 hours in a two week period in direct violation of the FLSA and 29 CFR § 778.104. [Wilcox Decl. at Exh. 1-C (Def. App. 012-013)]. Second, the spreadsheet essentially applied a fluctuating workweek calculation to these hourly employees, in direct violation of 29 C.F.R. § 778.114 and 29 CFR § 778.110. [*Id.*]. Both of these violations of the FLSA and its regulations had the necessary effect of artificially reducing the amount of overtime calculated as owed to the class members. *See* discussion at section III.B.4, below.

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 6**

T.      Moreover, employees were given false information by representatives of Hotels.com in order to induce them to sign these releases.  Employees were told that these calculations were "100% accurate" [Judd Dec., ¶ 11 (Pl. App. 20); Janelle Nelson Dec., ¶ 15 (Pl. App. 42)], that these amounts represented "every penny" they were owed [Judd Dec., ¶ 11 (Pl. App. 20)], that these checks were the result of an audit initiated by the Human Resources representative [Judd Dec., ¶ 11 (Pl. App. 20)], that these amounts were owed due to "rounding errors" and "payroll discrepancies" [Judd Dec., ¶ 11(Pl. App. 20)], that these amounts had nothing to do with Hotels.com's failure to pay for breaks [Judd Dec., ¶ 11 (Pl. App. 20); Janelle Nelson Dec., ¶ 15 (Pl. App. 42)], and that there was no outstanding lawsuit dealing with overtime owed to Hotels.com employees.  [Judd Dec., ¶ 11 (Pl. App. 20)].

## III. ARGUMENT

### A.      Standard of Review

The standard which the Movant must meet in order to support Summary Judgment is set out in Fed. R. Civ. P. 56.  It is axiomatic that summary judgment must be denied if material facts are genuinely in dispute.  Reviewing all of the evidence in the record, this Court "must draw all reasonable inferences in favor of the nonmoving party [here, Plaintiffs], and [this Court] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.* 120 S.Ct. 2097, 2110 (2000); *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000)(King, Chief J.); *see also Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (stating that it is the function of the jury to weigh conflicting evidence and inferences and determine the credibility to be accorded to the witnesses).  In so doing, this Court "must disregard all evidence favorable to the moving party [here, Hotels.com] that the jury is not required to



believe." *Reeves*, 102 S.Ct. at 2110. Proper application of these standards in this case leads to the inescapable conclusion that Defendants' Motion for Partial Summary Judgment must be denied.

**B. Defendants Are Not Entitled to Summary Judgment**

**1. Summary.**

Defendants, relying upon cases inapposite to the facts raised in this case and stretching the holding in such cases far beyond their natural limits, argue that the waivers allegedly obtained from 743 Hotels.com employees are valid and enforceable **as a matter of law**, regardless of the facts surrounding the obtaining of those releases, and that, therefore, these 743 Hotels.com employees should be summarily denied the opportunity to challenge the validity of those releases.

The only Fifth Circuit case to address the issue of waivers in the context of a DOL-supervised voluntary restitution is *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537 (5th Cir. 1977). In *Sneed*, the Court determined on a full record after a trial by stipulated facts following full discovery[2] that the claims of the Plaintiff in that case were barred by the Plaintiff's execution of the release. However, the facts of that case were markedly different from those presented here. In *Sneed*, unlike the present case, the only challenge to the waiver presented by the Plaintiff there was that he desired to pursue a private action for liquidated damages and attorneys fees in addition to the unpaid overtime he had been paid in connection with the § 216(b) restitution. The Plaintiff there, unlike the Plaintiffs in the present case, made no allegations of fraudulent inducement, no allegations that the DOL had unwittingly relied on fraudulent time records, and no allegations that the calculation formulas utilized to determine the amount of unpaid overtime he was owed violated the FLSA and the DOL regulations thereunder.

---

[2] The Court's opinion makes reference to the deposition of the Plaintiff. 545 F.2d at 538, n.3.

The *Sneed* court specifically noted that the Plaintiff in that case had made no allegations that the release was obtained through fraud, 545 F.2d at 538, implying that such an allegation could lead to the invalidity of the release. In this case there **are** allegations of fraud that may well affect the validity of these releases. These allegations of fraud raise genuine issues of material fact that preclude summary judgment.

The *Sneed* Court did state that a valid waiver requires "(a) that the employee agree to accept the payment which the Secretary determines to be due and (b) that there be **'payment in full.'**" 545 F.2d at 539. Plaintiffs and the opt-ins in this case, unlike the plaintiff in *Sneed*, have challenged whether there has been payment in full. Plaintiffs and the opt-ins allege that there has not been "payment in full" both because of the Defendants' fraudulent alteration of the time records unwittingly relied upon by the DOL and because the spreadsheet provided to Defendants by the DOL violates the FLSA and the DOL's own regulations in major respects that guarantee that the 743 employees who have allegeldly signed DOL waivers have been underpaid.

Defendants, however, relying on *Walton v. United Consumers Club*[3] and its progeny, including *Mion v. Aftermarket Tool & Equip. Group*,[4] argue that "payment in full" means payment of any amount determined by the DOL. Even if *Walton* and its progeny were the law in this circuit, which they are not, this oversimplified analysis is not applicable in this instance, as it arises from cases that are clearly distinguishable from the instant case. In no case cited by Defendants were there claims of fraudulent inducement, nor claims that the DOL was relying on fraudulent data, nor any claims that a spreadsheet utilized by the DOL violated its own regulations in ways that guaranteed that the employees would not receive full payment of the amounts the DOL was

---

[3]     786 F.2d 303 (7th Cir. 1986).

[4]     990 F. Supp. 535, 540 (W.D. Mich. 1997).

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 9**

obviously attempting to achieve. Each such claim is clearly alleged here and there exist genuine issues of material fact regarding each of these claims that preclude summary judgement.

> **2.** **Plaintiffs have demonstrated genuine issues of material fact regarding fraud in the inducement.**

Summary judgment is inappropriate here because Plaintiffs have demonstrated that there are issues regarding whether the waivers executed by Judd and others were procured by fraud. Judd has averred that the Hotels.com representative who presented her with the waiver made false statements to induce her to sign the waiver. [Judd Dec., ¶11 (Pl. App. 20)]. Although she did not sign the waiver, Janelle Nelson has averred that the Hotels.com representative who presented her with the waiver made false representations in an attempt to induce her to sign the waiver. [Janelle Nelson Dec., ¶¶15-17 (Pl. App. 42, 43)]. Although Hotels.com has presented an affidavit from the Hotels.com representative who claims to have presented all waivers to all current employees denying that he made the representations Judd and Janelle Nelson claim, such affidavit merely highlights the existence of fact issues precluding summary judgment. Credibility determinations between competing versions of communications are fact issues that must be determined by a fact-finder and are inappropriate for determination on summary judgment. *Brumfield v. Jones*, 849 F.2d 152, 155-56 (5th Cir. 1988) (District Court may not choose between conflicting affidavits and/or optional reasonable inferences in summary judgment setting); *Gardner v. Hill*, 195 F.Supp. 2d 832, 839-40 (E.D. Tex. 2001) ("he said-she said" battle of affidavits raises a fact issue precluding summary judgment); *Bowen v. GDMFC of Texas, Inc.*, 1999 U.S. Dist. LEXIS 3824 (N.D. Tex. March 22, 1999) (Buchmeyer, J.) (battle of affidavits cannot be resolved in summary judgment).

Moreover, Plaintiffs have demonstrated that there are issues regarding whether there was fraud perpetrated by Hotels.com's counsel in delaying Hotels.com's answer date for a sufficient

period of time to allow Hotels.com to be able to present the waivers to employees before Plaintiffs were able to obtain notice. [Jones Dec., ¶¶ 3-6, Exh. A (Pl. App. 1-13); Judd Dec., ¶ 11 (Pl. App. 20); Wardrop Dec., ¶ 17 (Pl. App. 25); Janelle Nelson Dec., ¶ 15 (Pl. App. 42)]. Ms. Buffington's statement to counsel for Plaintiffs that a 60-day delay in Hotels.com's answer date was necessary because she had just received this file and that she now had to investigate Plaintiffs' allegations in three geographic locations was false and thus was a violation of Rule 4.01(a) of the Texas Disciplinary Rules of Professional Conduct, which requires that "a lawyer shall not knowingly make a false statement of material fact or law to a third person." Whether couched in terms of fraudulent inducement or estoppel, such conduct, which allowed Hotels.com to present waivers to employees without the benefit of the knowledge of pending litigation involving the very issue upon which the waivers were based, should not be countenanced and should form a legal basis for challenge to such waivers by persons who would not have signed such waivers had they known of the pending litigation or had they had the opportunity to consult with counsel who was already attempting to represent them. Federal courts have inherent powers to manage their own proceedings and to control the conduct of those who appear before them. *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996). In invoking that inherent power, District Court Judges are to exercise discretion in fashioning an appropriate remedy and have at their disposal an arsenal of remedies they can invoke. *Id.* Primary among the goals of the District Court in fashioning such a remedy should be to remedy any unfair advantage gained by the offending party. *Giardina v. Ruth U. Fertel, Inc.*, 2001 U.S. Dist. LEXIS 21804 (E.D. La. December 17, 2001) (prohibiting the use by a party of documents improperly obtained by that party's counsel); *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) (granting new trial where one party's counsel's witness tampering denied the other party a fair trial). In order to remedy the unfair advantage gained by Hotels.com through Ms. Buffington's



improper conduct, this Court should allow Judd and the other class members who signed waivers without the benefit of notice of this lawsuit to invalidate such waivers if they would not have executed the waivers had they had such notice. Genuine issues of material fact exist in this regard that preclude summary judgment.

### 3. Plaintiffs have demonstrated genuine issues of material fact regarding the validity of the time records upon which the DOL waiver calculations are based.

Plaintiffs have demonstrated genuine issues of material fact regarding whether the time records, upon which the DOL relied in its calculations, were fraudulently altered. Plaintiffs have presented the testimony of two different persons who were personally involved in the alteration of time records by deleting overtime hours that were not mandated by Hotels.com. [Wardrop Dec. ¶14 (Pl. App. 24); Janelle Nelson Dec. ¶13 (Pl. App. 42)]. Plaintiffs have further presented evidence that the directions to alter such documents came from high within Hotels.com's management, creating a reasonable inference that this practice was not limited to a single location. Again, while Hotels.com has submitted affidavits challenging these assertions, these affidavits merely highlight the existence of fact issues and present credibility issues that are not appropriate for determination on summary judgment. *Brumfield v. Jones*, 849 F.2d 152, 155-56 (5th Cir. 1988) (District Court may not choose between conflicting affidavits and/or optional reasonable inferences in summary judgment setting); *Gardner v. Hill*, 195 F.Supp. 2d 832, 839-40 (E.D. Tex. 2001) ("he said-she said" battle of affidavits raises a fact issue precluding summary judgment); *Bowen v. GDMFC of Texas, Inc.*, 1999 U.S. Dist. LEXIS 3824 (N.D. Tex. March 22, 1999) (Buchmeyer, J.) (battle of affidavits cannot be resolved in summary judgment).

Defendants argue that Plaintiffs have no legal right to challenge the waivers that resulted from these fraudulent time records because, as a matter of law, once the DOL has approved the

calculations they are unassailable. In making this argument, Defendants rely on cases that are factually and legally distinguishable. The cases Defendants rely upon involved situations of "buyers remorse," in which plaintiffs either simply disagreed with the amounts determined to be due or in which plaintiffs, after signing a waiver, determined that they preferred to seek liquidated damages in a private suit. None of these cases involved the situation involved here – where the very records relied upon to base calculations were alleged to be fraudulent. Defendants would have this Court hold that they are entitled to a windfall as a result of their own fraudulent conduct simply because the DOL approved calculations based on fraudulent time records the DOL did not know were fraudulent. Genuine issues of material fact regarding the time records utilized to determine the amounts owing to the Plaintiffs and the class members preclude summary judgment in this case.

> **4.** **Plaintiffs have demonstrated genuine issues of material fact regarding whether the DOL's calculations improperly violate the FLSA and the DOL's own regulations.**

        In what this Court has already recognized as a case of first impression, this case presents significant issues regarding whether the spreadsheet provided Hotels.com by the DOL contained formulas that improperly violated the DOL's own regulations. First, the spreadsheet measures hours worked in two week pay period increments and measures overtime in terms of hours worked in excess of 80 during that two week period. This is in direct contravention of DOL Regulations:

> The Act takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks. Thus, if an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40. This is true regardless of whether the employee works on a standard or swing-shift schedule and regardless of whether he is paid on a daily, weekly, biweekly, monthly or other basis. The rule is also applicable to pieceworkers

> and employees paid on a commission basis. It is therefore necessary
> to determine the hours worked and the compensation earned by
> pieceworkers and commission employees on a weekly basis.

29 CFR § 778.104. This standard is particularly important where, as here, the weekly amount of

overtime may be relatively small. If an employee's overtime comes exclusively from the two fifteen

minute break periods for which he/she was not compensated, the total overtime equates to 2.5 hours

a week. Those 2.5 hours are easily lost in combining weeks. For example, if an employee worked

40 hours in week 1 (42.5 with his break time added back), but missed a day in week two and thus

worked only 32 hours that week (34 hours with his break time added back), he would be entitled to

2.5 hours of overtime for week 1. However, by violating § 778.104, the spreadsheet used by

Defendants would result in no overtime being owed this employee since his total hours worked in

the two week period would be 76. This complete disregard of the DOL's own regulatory framework

and the FLSA itself. As the DOL regulations themselves state, the FLSA **"does not permit"** this

type of averaging of 2 or more weeks.

Second, the worksheet contains a completely inexplicable calculation that lowers an hourly

rate employee's regular rate by effectively applying a fluctuating workweek method of calculation

to hourly employees. This is completely improper and cannot be countenanced under any

interpretation of the statute or the regulations. By its express terms, the fluctuating workweek

method of calculation applies only to **salaried** employees. "An employee employed on a salary

basis may have hours of work which fluctuate from week to week . . ." 29 C.F.R. § 778.114.

Under the FLSA, overtime is calculated based on an employee's "regular rate." 29 USC §

207(a). For an employee compensated on an hourly basis, that employee's "regular rate" is his/her

hourly rate. 29 CFR § 778.110 ("If the employee is employed solely on the basis of a single hourly

rate, the hourly rate is his 'regular rate.'").

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** – Page 14

Many of the 743 Hotels.com employees who signed waivers were compensated on the basis of a single hourly rate. However, rather than utilizing their hourly rate as their "regular rate" as required under the statute, the regulations and the case law,[5] the worksheet recalculates the regular rate of hourly employees based on dividing the total hours worked into the gross compensation paid. Since the Hotels.com employees were not paid at all for their two fifteen minute breaks (they were not paid straight time for this half-hour, nor were they paid time and-a-half), this has the unavoidable effect of reducing the "regular rate" of hourly employees who have unpaid overtime hours below their regular hourly rate. This spreadsheet effectively calculates "regular rate" based on a fluctuating workweek method (a method reserved for salaried employees) for hourly employees, in complete contravention of every statutory, regulatory and case law guideline for calculating the regular rate for hourly employees. The effect of this inexplicable calculation is to necessarily reduce the regular rate for hourly employees who have unpaid overtime and to guarantee that they do not receive "payment in full" for their unpaid overtime hours.[6]

Again, Defendants argue that this blatant violation of the FLSA and its regulations is immaterial, improperly relying on the same cases that are factually and legally distinguishable and

---

[5] See *Castillo v. Case Farms of Ohio, Inc.*, 96 F. Supp. 2d 578, 639 (W.D. Tex. 1999); *Cash v. Conn Appliances, Inc.*, 2 F. Supp 2d 884, 894 (E.D. Tex. 1997).

[6] Utilizing the example from above, if the spreadsheet properly calculated overtime on a workweek basis, the employee in that example would be entitled to 2.5 hours of overtime compensation for week 1. Assuming that the employee was paid an hourly rate of $10.00 per hour, he would have previously been paid $400 ($10 x 40 hours) for his 40 non-overtime hours, and would be owed, properly applying his hourly rate as his regular rate, an additional $37.50 in overtime for the 2.5 hours of breaks for that week for which he had not been paid ($10 x 1.5 = $15 x 2.5 OT hours = $37.50). However, the spreadsheet would inexplicably divide the non-overtime pay of $400 by the total hours worked (including unpaid overtime hours), which would have the effect of reducing the employee's regular rate to below his hourly rate ($400 ÷ 42.5 = $9.41). This regular rate would then be used to multiply times hours worked ($9.41 x 42.5 = $399.93) and the additional half-time owed ($9.41 ÷ 2 = 4.71 x 2.5 = $11.78), for a total owed for that week based on the worksheet calculation of $11.71, rather than the correct amount owed of $37.50 ($399.93 + 11.78 = $411.71 - $400 = $11.71). Of course, since the worksheet improperly combines weeks, the employee would, under the worksheet calculation, get $0 for this week. These significant reductions (69% and 100%) are the inevitable result of those portions of the worksheet provided by the DOL and utilized by Defendants that are in direct conflict with the DOL's own regulations.

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 15**

attempting to stretch the findings in those cases to a blanket shield of DOL supervised waivers.

Defendants here also completely misconstrue the case of *Heavenridge v. Ace-Tex Corp.*, 1993 U.S.

Dist. LEXIS 21129 (E.D. Mich. September 3, 1993), arguing that *Heavenridge* presents a directly

analogous case in which the Court upheld a DOL-supervised waiver despite the fact that the plaintiff

had argued that the method of calculation violated the FLSA. This is a shameless misinterpretation

of the *Heavenridge* decision. The plaintiff in *Heavenridge* was a **salaried** "supervisor." There were

legal and factual issues regarding whether the plaintiff should have been paid under the fluctuating

workweek method of calculation. The DOL determined that the plaintiff should have been paid

under the fluctuating workweek method and calculated the plaintiff's back overtime due under such

method.

    *Heavenridge* is entirely distinguishable from the present case. This case does not involve

the DOL making a legal and/or factual determination as to whether a certain regulation does or does

not apply in a situation in which it may arguably apply or not. The regulation requiring that

overtime be calculated on a workweek basis is not a regulation that may apply in some

circumstances but not in others – it applies in EVERY circumstance. It is one of the bedrocks of

overtime calculation under the FLSA. Similarly, the fluctuating workweek method of calculation,

while it may apply in a situation such as that as existed in *Heavenridge*, in which the employee was

salaried, by its very terms does not and cannot be applied to hourly employees.

    Hotels.com cannot and, interestingly, does not argue either that the averaging of workweeks

or the application of a fluctuating workweek method of calculation to hourly employees is proper.

Hotels.com is, thus, simply left to argue that it doesn't matter. While Hotels.com's desire to

maintain the windfall that these improprieties secured to them may be understandable, this Court

cannot turn a blind eye to the fact that these glaring violations of the FLSA and the DOL regulations

guaranteed that the calculations of overtime due to Judd and the other class members would be significantly reduced – not through some process of negotiation or compromise, but simply from the utilization of a spreadsheet that ignored very basic rules established by Congress and the DOL. It matters.

5. **"Payment in full" does not and cannot mean any amount determined or approved by the DOL, no matter what.**

a. **"Payment in full" means full payment of the overtime due.** The 7th Circuit in *Walton* and the cases which rely theron are simply wrong in their interpretation of the phrase, "full payment." The legislative history upon which the 7th Circuit relies in coming to its erroneous conclusion makes this perfectly clear. The Senate Report relied on by the *Walton* court (as well as the corresponding House Report) clearly talks in terms of an employee being compensated fully for the overtime wages owed him/her, and states that the purpose of section 16(b) is to prevent follow-on lawsuits for liquidated damages and attorneys' fees. It does not talk at all about subsequent suits for the remainder of the original amount of overtime owed. The Senate Report assumes that the employee has been paid that full amount.

Neither the Senate Report nor House Report nor the statute itself speak in terms of settlement or compromise. They speak only of payment in full of back wages owed.

Indeed, employees in a DOL-supervised payment are not even informed that their claims are being compromised. Form WH-58 does not inform an employee that the DOL has compromised their claim for something less than the full amount owed. To the contrary, Form WH-58 affirmatively states that the employee is receiving "payment in full" from the employer for a specific period "of unpaid wages due me under the Fair Labor Standards Act."

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 17**

The Fifth Circuit has not interpreted the phrase, "payment in full." This Court is not bound by the erroneous holdings of other circuits on this issue. Plaintiffs urge this Court to give the language of the statute and its legislative history the clear interpretation intended – "payment in full" requires the full payment of back wages due. If, and only if, an employee is fully compensated for the total amount of back wages due will the employer then be immunized from subsequent private suits for liquidated damages and attorneys' fees.

**b.      Even if the Walton Court is correct in its interpretation of the phrase, "payment in full," that interpretation cannot be stretched to mean any amount determined by the DOL, no matter what.** Defendants rely on *Walton v. United Consumers Club,*[7] *Mion v. Aftermarket Tool & Equip. Group,*[8] and other cases relying thereon to argue that "payment in full" does not necessarily mean an amount equivalent to what a plaintiff might obtain in court, but rather only payment of an "agreed [upon] amount." Thus, Plaintiffs are allegedly "paid in full" if they merely agree to accept a check in **any** amount determined by the DOL. As noted before, this analysis is vastly oversimplified because it is based on cases that are clearly distinguishable from the instant case and ignores those basic differences. In none of the cases relied upon by Defendants were there claims of fraudulent inducement, claims that the DOL was relying on fraudulent data, nor any claims that a spreadsheet utilized by the DOL violated its own regulations in ways that guaranteed that the employees would not receive full payment of the amounts the DOL was obviously attempting to achieve. Those claims are present here and each of them precludes summary judgment in this matter.

---

[7]      786 F.2d 303 (7th Cir. 1986).

[8]      990 F. Supp. 535, 540 (W.D. Mich. 1997).

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 18**

6.    **Defendants are not entitled to a Portal-to-Portal defense.**

a.    **The so-called Portal-to-Portal defense does not apply to § 216(b)**

**waivers.** Defendants argue that the good faith defense established by § 259 of the Portal-to-Portal

Act insulates them from liability for any amounts beyond those determined by the DOL in a § 216(b)

voluntary restitution. Section 259 of the Portal-to-Portal Act provides:

> **§ 259. Reliance in future on administrative rulings**
>
> (a) In any action or proceeding based on any act or omission on or after the date of the enactment of this Act [enacted May 14, 1947], no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

29 U.S.C. § 259. This provision was intended to protect employers from lawsuits for failure to pay

overtime when that failure was based directly on a clear regulation promulgated by the DOL or an

opinion letter issued by the DOL. *Anness v. United Steel Workers of America*, 707 F.2d 917, 921

(6th Cir. 1983). This provision makes no reference to § 216(b) payments.

The only case that even arguably applies § 259 in the § 216(b) context is an unreported

decision that contains reasoning that is flawed, at best. *Heavenridge v. Ace-Tex Corp.*, 1993 U.S.

Dist. LEXIS 21129 (E.D. Mich. September 3, 1993). At issue in *Heavenridge* was whether the

employer should have utilized the fluctuating workweek method of calculation to calculate overtime

for a salaried employee. The employee argued that there was no "clear mutual understanding" as required by the regulations, and thus it was not proper to utilize the fluctuating workweek method of calculating overtime. The *Heavenridge* Court, although recognizing that there was no mutual understanding, and although acknowledging that the Defendant could not rely on the oral statements of the DOL investigator, *see Anness v. United Steel Workers of America*, 707 F.2d 917, 921 (6ᵗʰ Cir. 1983); *Usery v Godwin Hardware, Inc.*, 426 F Supp 1243 (1976, WD Mich), then turned around and bootstrapped its way to its ultimate finding by saying that the employer *could* rely on the regulation (even though the regulation itself contained the very requirement of clear mutual understanding the Court had acknowledged was lacking). The *Heavenridge* Court never addresses the issue of how or why § 259 could or would apply in a § 216(b) context.

Other Courts have disagreed, and have found that the types of "findings" involved in a § 216(b) context are not the type of agency rulings or orders contemplated by § 259. In *Spring v. Washington Glass Co.*, 153 F.Supp. 312 (W.D. Pa.), the Court examined the issue at length and determined that the types of "findings" involved in a § 216(b) context are not the type of agency rulings or orders contemplated by § 259. That case involved a letter received by the Defendant from an Investigation Supervisor of the Wage and Hour Division finding that the employees at issue were exempt. The Defendant, as Hotels.com does here, attempted to raise § 259 as a defense. The *Spring* Court rejected that defense, finding that these types of "findings" by investigators and their supervisors were not the types of agency action contemplated by § 259.

> This letter indicates that the Division investigated the facts concerning plaintiff's work during two periods of time and interpreted them in the light of the Regulation. The facts relied on by the Supervisor in making his findings are not before the court. This is not the type of interpretation contemplated by § 10. We think that this section refers to "an interpretation of the law with reference to (a set of facts of general applicability)". *Giannini v. Standard Oil Company*,

D.C.N.D.Ind.1955, 130 F.Supp. 740, 751; *Burke v. Mesta Machine Co.*, D.C.W.D.Pa.1948, 79 F.Supp. 588, 610.

In *Jenner v. 320 N. 13th St. Co.*, decided by Judge McGranery of the United States District Court for the Eastern District of Pennsylvania, and reported in Volume 18 C.C.H. Labor Cases, P65784, it was held that a 'ruling' by a Wage and Hour Division Supervisor that a certain employee was exempt, which 'ruling' was later 'codified' in writing by the Regional Attorney, is not the type of administrative ruling contemplated by § 10 as a basis for a good faith defense.

In a statement by the Administrator of the Wage and Hour Division relating to the Portal-to-Portal Pay Act, 29 C.F.R. § 790.19(c), 12 Fed.Reg. 7655; 3 C.C.H.Labor Law Reporter, 4th ed., P24116.19(c), it was said that the administrative ruling relied upon must be:

> '* * * actually that of the authority vested with power to issue or adopt regulations, orders, rulings, approvals, interpretations, administrative practices or enforcement policies of a final nature as the official act or policy of the agency. Statements made by other officials or employees are not regulations, orders, rulings, approvals, interpretations, administrative practices or enforcement policies of the agency within the meaning of sections 9 and 10.' (Emphasis supplied.)

Defendant did not request a ruling, approval or interpretation from the Administrator of the Wage and Hour Division nor did it receive any such ruling, approval or interpretation from him or his counsel or other person to whom the Administrator's authority had been delegated. We do not think that the favorable finding in the letter of the Supervisor is equivalent to a ruling, approval or interpretation authorized by the Administrator as is contemplated by § 10 of the Act.

Accordingly, it is this court's opinion that the defense of 'good faith' under § 10 of the Portal-to-Portal Pay Act has not been made out in this case.

153 F.Supp. at 318.

More fundamentally, however, the failure to pay overtime of which Plaintiffs complain in their Complaint is the original failure to pay overtime. Hotels.com cannot even begin to argue that its original decision not to pay overtime was based on good faith reliance on any DOL regulation, since those regulations clearly require overtime for hourly employees and clearly require that employees be paid for breaks of twenty minutes or less. Hotels.com cannot now bootstrap its way to a § 259 defense of decisions that are unquestionably outside the purview of that defense.

   **b.**  **Even if the Portal-to-Portal defense does apply to § 216(b) waivers, Hotels.com cannot claim that defense in this case.** Even if this Court determines that § 259 generally applies to § 216(b) waivers, the § 259 defense is not applicable in this case. Section 259 requires a "good faith" reliance on DOL regulations, orders or rulings. *Henchy v. City of Absecon*, 148 F.Supp. 2d 435, 442 (D.N.J. 2001). Hotels.com cannot claim "good faith" reliance if it engaged in fraudulent inducement, if the DOL's calculations were based on fraudulent records, and/or if the DOL's calculations were based on clear violations of published DOL regulations. At the very least, genuine issues of material fact exist regarding the issue of "good faith." *EEOC v. The Baltimore & Ohio Railroad Co.*, 557 F.Supp. 1112, 1122 (D. Md. 1983) (the issue of "good faith" is a pure issue of fact).

### IV. ALTERNATIVE RULE 56(F) MOTION FOR CONTINUANCE

  Despite the fact that Defendants' Motion for Partial Summary Judgment is premature, submitted prior to any discovery being conducted, and submitted for the obvious purpose of end-running this Court's ruling on Plaintiffs' Motion for Notice, Plaintiffs believe firmly that they have presented sufficient evidence to defeat Defendants' Motion. However, to the extent that the Court determines that Plaintiffs have not submitted sufficient evidence, Plaintiffs request that the Court either deny Defendants' Motion as premature or hold Defendants' Motion in abeyance until after

notice has been issued, those persons who choose to opt-in have done so, and discovery has been

completed. Then, and only then, will this Court be able to consider Defendants' Motion on a full

record.

## V. CONCLUSION

Genuine issues of material fact exist in this case. Plaintiff is entitled to have those issues

resolved at a trial on the merits. Summary judgment simply is not appropriate in this case.

Dated: October 22, 2003                    JONES & ASSOCIATES, P.C.

                                           James A. Jones
                                           (TX Bar No. 10908300)
                                           5015 Tracy, Suite 100
                                           Dallas, TX 75205
                                           (214) 219-3456
                                           (214) 219-9309 (fax)

                                           **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

This is to certify that on the 22nd day of October, 2003, a true and correct copy of the above and foregoing *Brief in Support of Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment* was served by First Class U.S. Mail on the following counsel for Defendants in compliance with Fed.R.Civ.P. 5:

Jordan W. Cowman
Julie Buffington
Baker & McKenzie
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201

James A. Jones

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** – Page 23