ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 1 1 2003

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

| | |
|---|---|
| ISABEL SOLIS and TRISHA HOLLOWAY, on behalf of themselves and on behalf of all others similarly situated, | * <br> * <br> * <br> * <br> * |
| Plaintiffs, | * |
| | * Civil File No.3:03CV-00618 L (AH) |
| v. | * |
| | * |
| HOTELS.COM TEXAS, INC., DAVID LITMAN, ROBERT DIENER, And SANDRA D'ARCY, | * [Wage/Hour - Fair Labor <br> * Standards Act] <br> * [Collective Action] <br> * [Jury Demanded] |
| Defendants. | * |
| | * |

SECRETARY OF LABOR'S AMICUS CURIAE BRIEF
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

HOWARD M. RADZELY
Solicitor of Labor

STEVEN J. MANDEL
Associate Solicitor

JONATHAN M. KRONHEIM
Counsel for Trial Litigation

MARY J. RIESER
Attorney

U.S. Department of Labor
200 Constitution Ave., N.W.
N 2716
Washington, DC  20210
(202) 693-5555

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ISABEL SOLIS and TRISHA HOLLOWAY, on behalf of themselves and on behalf of all others similarly situated, | * * * * * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil File No.3:03CV-00618 |
| v. | * | |
| | * | |
| HOTELS.COM TEXAS, INC., | * | [Wage/Hour – Fair Labor |
| DAVID LITMAN, ROBERT DIENER, | * | Standards Act] |
| And SANDRA D'ARCY, | * | [Collective Action] |
| | * | [Jury Demanded] |
| Defendants. | * | |
| | * | |

SECRETARY OF LABOR'S AMICUS CURIAE BRIEF
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

STATEMENT OF THE ISSUE

Whether Plaintiffs may bring a private action under section 16(b) of the FLSA, 29 U.S.C. 216(b), after they signed receipts waiving the right to sue and accepted checks for the payment of back wages under an agreement supervised by the Secretary of Labor under section 16(c) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 216(c).

INTRODUCTION AND STATEMENT OF INTEREST

The Secretary of Labor ("Secretary") submits this brief as amicus curiae to present her views on an issue that will have a significant impact on the enforcement and administration of the FLSA. The authority of the Secretary

to supervise the payment of unpaid minimum wage and overtime compensation under section 16(c) of the FLSA and an employee's waiver of the section 16(b) right to bring a private action against an employer are at issue in this case.

In fiscal year ("FY") 2002, the Wage and Hour Division of the Department of Labor ("Wage-Hour" or "the Division") collected more than $175 million in back wages for employees, through the successful completion of over 4000 compliance actions. See Declaration of Michael Ginley at ¶ 3 (attached). It is the Secretary's view that if this Court rules that opt-in plaintiff Judd, and others similarly situated, may continue their actions under section 16(b) of the FLSA after participating in a settlement supervised by the Secretary under section 16(c), it will make it more difficult for the Secretary to carry out her statutory responsibility to secure back wages for employees under the FLSA.

### STATEMENT OF THE CASE

On March 25, 2003, Plaintiffs Isabel Solis and Trisha Holloway filed a lawsuit against Defendants Hotels.Com

2

Texas, Inc., David Litman, Robert Diener, and Sandra D'Arcy ("Hotels.Com" or "Defendants").[1]

On July 18, 2003, Paola Judd filed a Consent to Join Collective Action against Hotels.Com. See Judd Consent at App. 046-047.[2]

On July 18, 2003, Plaintiffs filed a Motion to Facilitate Section 216(b) Notice.

On October 1, 2003, following briefing by both parties, the Magistrate issued a Report and Recommendation granting Plaintiffs motion.

On October 2, 2003, Hotels.Com filed a Motion for Partial Summary Judgment As To Opt-In Plaintiff Paola Judd and all other Persons Participating in the Department of Labor Supervised Settlement ("Motion for Summary Judgment"). Hotels.Com argued that Judd waived her right to bring a private action under section 16(b) when she participated in the DOL supervised settlement. Defendants asserted that Judd accepted and cashed a check for back

---

[1] Following an investigation by the Department of Labor ("DOL"), which identified FLSA violations, Hotels.Com agreed to comply with the FLSA in December 2002. Under DOL's supervision, Hotels.Com reviewed its records and computed back wages. Employees who accepted back wage checks also signed receipts, waiving their right to sue. See Declaration of Corando Carrizales.

[2] References are to the Appendix of Exhibits in Support of Defendant's Motion for Partial Summary Judgment.

wages as "payment in full" and executed a waiver of her

section 16(b) claims for unpaid overtime compensation

against Hotels.Com.  See Motion for Partial Summary

Judgment at p. 2.  On October 22, 2003, Plaintiffs filed a

Response asking the Court to deny Defendant's Motion for

Partial Summary Judgment.  Plaintiffs allege that DOL

relied on fraudulent time records provided by Hotels.Com in

calculating back wages, that the spreadsheet provided to

Hotels.Com by DOL contained calculation formulas that

violated DOL's regulations, and that Hotels.Com

fraudulently induced employees to sign waivers.[3]  Hotels.Com

filed a Reply brief on November 6, 2003.

### STATEMENT OF THE FACTS

The Wage and Hour Division ("Wage-Hour") of the

Department of Labor enforces the FLSA on behalf of the

Secretary.

In October 2002, Wage-Hour conducted an investigation

of Hotels.Com and identified violations of the overtime

requirements of the FLSA.  See Declaration of Corando

Carrizales ("Carrizales Declaration") pp. 2-5.  (Attached)

Wage-Hour held an initial conference at the Pharr Texas

---

[3] The Secretary takes no position concerning the allegation
of fraudulent inducement to sign waivers, as that activity,
if it occurred, would have postdated our investigation and
the Secretary has no information on that matter.

4

Call Center with Director Ken Wilcox and Human Resources
Manager Yolanda Champion on October 8, 2002. The Wage-Hour
investigator requested records and an opportunity to
interview employees. On October 17 and 18, 2003, the
investigator conducted employee interviews and reviewed
payroll records at Hotels.Com's Pharr, Texas location. Id.
Wage-Hour identified FLSA violations including the failure
of Hotels.Com to compensate their employees for two 15-
minute breaks and the failure to include commissions and
bonuses in computing the regular rate, resulting in a
failure to pay the appropriate overtime. Id. The
investigation did not reveal any intentional alteration of
payroll records or any complaint from any employee beyond
those noted above. Id.

On October 31, 2002, Wage-Hour held a conference with
Ken Wilcox and advised him of the results of DOL's
investigation, explaining the extent of violations and the
actions needed to correct them. See Carrizales Declaration
p.3. Wage-Hour provided an Excel spreadsheet with formulas
for calculating back wages to assist Hotels.Com in
accurately computing a regular rate and proper overtime.
Id. The spreadsheet computed unpaid overtime based on a
40-hour workweek. Id.

5

On November 12, 2002, Wage-Hour discussed the FLSA
minimum wage and overtime requirements with Corporate Human
Resources Director Stephanie Douglas.  See Carrizales
Declaraton.  The investigator explained the FLSA violations
that he had identified and requested records for the entire
period of the investigation to assist in back wage
computations.  Id.

On December 19, 2002, Wage-Hour entered into
negotiations with Hotels.Com through its attorneys.
Hotels.Com agreed to fully cooperate pursuant to the DOL
supervised settlement process.  See Carrizales Declaration
pp. 3, 4.  As part of the settlement, Hotels.Com agreed to
review its records and compute the back wages owed
according to Wage-Hour's instructions and under Wage-Hour's
supervision.  Id.  Hotels.Com agreed to utilize the Excel
spreadsheet template provided by Wage-Hour.  Id.

On May 15, 2003, Hotels.Com produced spreadsheets
containing back wage calculations for wages owed to its
non-exempt call center employees.  See Carrizales
Declaration p. 4, 5.  In addition, Hotels.Com provided
Wage-Hour with the underlying payroll records.  Id.  Wage-
Hour reviewed the back wage computations for accuracy,
reviewed the payroll records to determine the validity of
the computations, instructed Hotels.Com in making any

corrections, and approved the final computations after corrections were made. <u>Id.</u>

Hotels.Com used waiver language developed by the Department of Labor in its WH-58 form, in drafting its receipt form. <u>See</u> Carrizales Declaration pp. 5, 6. Wage-Hour reviewed and approved the use of the waiver language. [4] <u>Id.</u> Hotels.Com included an additional notice with the receipt, stating that the check was provided as payment in full. [5] Finally, Wage-Hour approved a statement, stamped on

---

[4] The Receipt For Payment Of Lost Or Denied Wages included the following waiver:

> **NOTICE TO EMPLOYEE UNDER THE FAIR LABOR STANDARDS ACT** – Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorneys' fees and court costs. Generally, a two-year statute of limitations applies to the recovery of back wages. Do not sign this receipt unless you have actually received payment of the back wages due.

<u>See</u> Motion for Partial Summary Judgment, App. 024.

[5] The Notice stated:

> We have audited our records and determined that we owe you the enclosed amount. Please read and sign the attached RECEIPT FOR PAYMENT OF LOST OR DENIED WAGES for payment in full and return the signed form to Hotels.com using the enclosed

the back of every check, which said:  "Payment in full as
determined by the Department of Labor."  Id.

On May 23, 2002, Wage-Hour provided Hotels.Com with
final written instructions for calculating and disbursing
back wages.  See Motion for Partial Summary Judgment, App.
021-022.  Under the agreement, Hotels.Com would make full
back wage payment by June 27, 2003.  Id.  Wage-Hour
instructed Hotels.Com to provide preliminary back wage
payment evidence by July 4, 2003.  Id.  Such evidence would
include a report listing the employee's name, address,
social security number, check number, and the gross and net
amounts paid.  Id.  Wage-Hour told Hotels.Com to provide it
with a list of any employees who had not been paid,
including the employee's last known address, social
security number, and attempts by Hotels.Com to locate the
person.  Id.  This list was to be received at the Wage-Hour
office by July 27, 2003.  Id.  Wage-Hour instructed
Hotels.Com to provide copies of the signed receipt forms as
they were returned.  Id.  Wage-Hour advised that it would
contact Hotels.Com by September 15, 2003 to identify any

---

> envelope.  For your convenience, we have provided
> a copy of the RECEIPT for your records.
>
> Thank you for your prompt attention to this
> matter.

See Motion for Partial Summary Judgment, App. 023.

8

employees who could not be located.  Id.  Finally, Wage-Hour
told Hotels.Com to send a check made payable to the Wage
and Hour Division – Labor in the total Net amount due by
September 25, 2003.  Id.  In addition to this check,
Hotels.Com was required to send copies of the front and
back of the cancelled check for any person who was paid,
but who did not sign a receipt.  Id.

On August 28, 2003, Hotels.Com sent Wage-Hour updated
Excel spreadsheet reports containing complete back wage pay
data, including information about employees who had not
received their checks.  In addition, Hotels.Com provided
Wage-Hour with copies of all receipt forms and checks that
had cleared since its previous report of July 25, 2003.

Wage-Hour devoted considerable time and attention to
supervising the settlement, including negotiating terms,
reviewing records, developing a spread sheet, monitoring
and reviewing computations, and supervising back wage
payments for the Defendant's locations in Pharr, Fort
Worth, and Dallas.  See Carrizales Declaration pp. 2-8.

On June 6, 2003, Hotels.Com provided a receipt and a
check for back wages to Judd.  See Motion for Partial
Summary Judgment, App. 019, 024, 025.  The receipt form
contained waiver language notifying Judd that acceptance of
the check constituted a waiver of her right to file an

9

action against Hotels.Com under section 16(b) of the FLSA.
Judd signed the receipt on June 6, 2003 and cashed the
check. See Motion for Partial Summary Judgment, App. 024,
025. Over 900 employees were included in the settlement.
Over 700 employees signed receipts and cashed their checks.
Approximately 215 employees cashed their checks but did not
return their signed receipts.

ARGUMENT

THE SECRETARY SUPERVISED THE PAYMENT OF BACK WAGES WITHIN
THE MEANING OF SECTION 16, AND THUS ANY EMPLOYEE WHO
ACCEPTED AND RECEIVED BACK WAGES WAIVED HER RIGHT TO SUE
UNDER SECTION 16(b).

   A.   Statutory Language and Legislative History

     Before 1949, the Supreme Court had held that it was
against public policy for an employee to waive his or her
right to unpaid compensation. See Brooklyn Savings Bank v.
O'Neil, 324 U.S. 697 (1945) (statutory wages cannot be
waived by agreement). In 1949, Congress amended the FLSA
to authorize the Secretary to recover back wages for
employees through the settlement of cases. This amendment
to section 16(c) of the Act has two distinct provisions.
First, it authorizes the Secretary to supervise the payment
of unpaid minimum wage or overtime compensation. 29 U.S.C.
216(c). Second, it provides that an employee's agreement

10

to accept the payment supervised by the Secretary waives the employee's right to bring a private action.[6]

The legislative history explains the purpose of this provision.  Prior to 1949, Wage-Hour had followed a policy "in cases which it did not believe justified litigation, of requesting employers to make voluntary restitution to employees affected [by] unpaid minimum wages or overtime compensation due under the act."  S. Rep. 81-640, reprinted in, 1949 U.S.C.C.A.N. 2241, 2248.  Voluntary restitution had declined during the three years prior to the 1949 FLSA amendments.  In explaining the reasons for the decline, the Senate Committee on Labor and Public Welfare recognized that it was difficult, if not impossible, for the Department to collect back wages short of litigation unless an employer knows that any payment under a settlement with

---

[6] The provision states in relevant part:

> The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

29 U.S.C. 216(c).

11

the Department of Labor will satisfy its liability for back

wages and liquidated damages.  As stated in the Committee

report:

> Undoubtedly one of the most important of these
> [causes for the decline of voluntary restitution]
> is the fact that an employer who pays back wages
> which he withheld in violation of the act has no
> assurance that he will not be sued for an
> equivalent amount plus attorney's fees under the
> provisions of section 16(b) of the act.  One of
> the principal effects of the committee proposal
> will be to assure employers who pay back wages in
> full under the supervision of the Wage and Hour
> Division that they need not worry about the
> possibility of suits for liquidated damages and
> attorney's fees.  Id. at 2249.

Similarly, the Committee agreed with the Report of the

House Committee on Education and Labor that the amendment

"is essential to the equitable enforcement of the

provisions of the act and that it should be welcomed by

fair-minded employers who wish to make restitution for

perhaps unwitting violations of the act by encouraging them

to do so in such a manner to insure that their liability

will be limited to the amount of wages due."  Ibid.

The purpose of the amendment, therefore, was to give

the Secretary the tools to enter into settlements for the

recovery of back wages.  The essential tool the legislation

provided was the leverage to assure employers that the

payment of back wages, when supervised by the Secretary and

agreed to by the employee, would resolve the matter.

12

B.  The Essential Elements for the Waiver of a Section
16(b) Right to Bring a Private Action Are Present in this
Case.

In the more than 50 years since the 1949 amendment,
the courts have given force to the statutory language and
the legislative history by confining their consideration to
two questions: (1) did the Secretary intend to utilize her
authority to supervise a settlement; and (2) did the
employee agree, upon payment in full, to waive the right to
sue.

The leading case in this Circuit holds:  "For there to
be a valid waiver section 216(c) simply requires (a) that
the employee agree to accept the payment which the
Secretary determines to be due and (b) that there be
'payment in full'."  Sneed v. Sneed's Shipbuilding, Inc.,
545 F.2d 537, 539 (5th Cir. 1977).  In Sneed, as part of a
Wage-Hour supervised settlement, the employee signed a
waiver form, but returned the back wage check to his
employer and brought a private action.  The Fifth Circuit
dismissed that action, ruling that the employee waived his
right to bring an action under section 16(b) by signing the
waiver and accepting the check.

Like the employee in Sneed, over 700 employees signed waiver receipts and accepted checks from Hotels.Com as payment in full for the overtime owed to them pursuant to a Wage-Hour supervised settlement. They have similarly waived their right to sue under section 16(b) of the FLSA. Sneed requires that this Court dismiss these employees' cases.

Plaintiffs contend that they did not receive all of the wages they were due. As the Seventh Circuit emphasized in Walton v. United Consumers Club, Inc., 786 F.2d 303, 305 (7th Cir. 1986), "[t]he statute is concerned with settlements, and a settlement is a compromise . . . the employee surrenders his opportunity to get 100 cents on the dollar, in exchange for a smaller payment with certainty." As recognized explicitly in Walton and implicitly by the court in Sneed, "[s]ection 16(c) requires 'payment in full' of the agreed amount, not of the underlying claim." Walton, 786 F.2d at 305. See also Bullington v. Fayette County School District, 2000 WL 1568726 (Ga. App.) (The crucial element for waiver is a demonstration that the settlement, although not payment in full in the literal sense "was supervised by and approved by the Department of Labor.") Therefore, the necessary elements for the waiver of a claim are the Secretary's determination of the amount

14

owed, the employee's agreement, and the payment of that amount. Each of those elements is present here.

Here, over 700 employees cashed their checks and returned their signed receipt forms in a settlement supervised by the Department of Labor. Some employees, however, cashed their checks, but did not return the signed receipts. In regard to the group of employees who cashed their checks, but did not sign the receipt forms, courts have held that cashing a settlement check, when payment is accompanied by a release form and supervised by the Department of Labor, is enough to waive the employee's right to sue under section 16(b). See Mion v. Aftermarket Tool & Equipment Group, 990 F. Supp. 535, 540-541 (W.D. Mich. 1997); Heavenridge v. Ace-Tex Corp., 1 WH Cases 2d (BNA) 1367 (E.D. Mich. Sept. 3, 1993). Compare Walton (cashing a check, when no release form was provided, no agreement signed and thus no supervised settlement, was insufficient to extinguish an employee's 16(b) claim). It is undisputed that every employee who participated in the settlement received a receipt form that included the waiver language. Thus, they had notice that acceptance of the check waived their section 16(b) rights. In addition, a statement stamped on the back of the check notified the employee that the check was for: "Payment in full as

determined by the Department of Labor." Therefore, even if an employee did not return a signed receipt, the waiver of a claim under 16(b) remains valid, because the employee accepted the check as payment in full under a settlement supervised by the Department of Labor.

The Department of Labor, through the Wage-Hour Division, supervised the payment of back wages as authorized by section 16(c). Recently, in <u>Niland v. Delta Recycling Corp.</u>, 2003 WL 21939781 (S.D. Fla.) the district court stated, after receiving an amicus brief from the Secretary in a very similar matter, that "the question is not what type of supervision took place but whether it occurred at all . . . Once the Department has concluded that it not only agreed to supervise the payment of back wages but also that it did in fact conduct such supervision pursuant to section 216(c), the question of whether the waiver was valid and bars further litigation by Plaintiff is answered conclusively." 2003 WL 21939781 *8 n.4.

In <u>Cuevas v. Monroe Street City Club, Inc.</u>, 752 F. Supp. 1405, 1415-16 (N.D. Ill. 1990), an employee accepted a check for back wages and signed a release form. The court held that by providing adequate supervision of the back wage payments, the Secretary had approved the settlement of claims. The court found the supervision was

sufficient where Department personnel met with the
accountant and employer representatives concerning the
investigation, received correspondence concerning the
investigation and the amount paid to employees, and
reviewed questions from the accounting firm. The
Department also provided the release forms, which included
language identical to that used by Hotels.Com on their
receipts in this case. Similarly, in <u>Torreblanca v. Nasa
Foods, Inc.</u>, 1980 WL 2100 (N.D. Ind.), the Secretary's
supervision of a settlement was evidenced by the fact that
the Wage-Hour investigator and the employer's treasurer
exchanged a visit, memorandum, phone call, and letter.

As we point out in the Statement of Facts, the
Secretary's supervision was very extensive in this case.
The investigator met with the employer on numerous
occasions, developed formulas for calculating the back
wages, presented the employer with an Excel spreadsheet
with instructions on how to apply the formulas, monitored
and reviewed the computations, approved waiver language to
be included in the receipts that were provided to the
employees,[7] approved language that was stamped on the backs

---

[7] In supervising the payment of back wages under an
agreement like the one with Hotels.Com, Wage-Hour is not
confined to authorizing an employer's use of a WH-58 form
to obtain an employee's waiver. Instead, the regulations

of the checks, approved an additional statement that was included with the receipt and the checks, and supervised the payment of back wages at the employer's three locations. There can be no doubt that the Secretary adequately supervised the payment of back wages within the meaning of section 16(c) of the FLSA.

The courts will not approve a settlement in an FLSA case unless it is supervised by the Department of Labor under section 16(c) or sanctioned by judicial process as part of a settlement agreement in litigation. For instance, in Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982), the court disapproved a private settlement where the Secretary of Labor did not supervise back wage payments. Here, on the other hand, the Department clearly exercised its supervisory authority. Wage-Hour would not authorize the use of any waiver language by an employer if it had not supervised the payment of back wages as required under section 16(c). See Declaration of Michael Ginley at ¶ 9.

---

allow the employer to use either a receipt form provided by or authorized by the Wage and Hour Division of the Department of Labor. See 29 C.F.R. 516.2(b). Thus, while a Form WH-58, may be used to inform employees of their rights under section 16(b) of the FLSA, Wage-Hour may also authorize an employer to use the same or similar waiver language of the employer's own design.

On a more fundamental level, at least absent proof of some egregious circumstance, a ruling permitting employees who participated in the settlement to proceed with a section 16(b) action would be contrary to the plain language, the congressional purpose, and the case law under section 16(c) by opening agreements to judicial scrutiny after payment has been made by the employer, and causing employers to doubt the efficacy of an employee's waiver. Such a ruling would have a chilling effect on the Secretary's ability to settle cases short of litigation. As the Fifth Circuit has recognized, "The addition of the waiver provision [of section 16(c)] was intended to . . . create an incentive for employers voluntarily to accept settlements supervised by the Wage and Hour Division." Sneed, 545 F.2d at 539.

Here, plaintiffs attack the adequacy of the Secretary's supervision by implying that the Department "unwittingly" relied on altered payroll records in computing the back wage payments and provided Hotels.Com with an Excel spreadsheet that included formulas that were contrary to law. This Court should refuse plaintiffs' invitation to second-guess the Department's supervision of a settlement and soundly reject such groundless allegations.

Section 16(c) contains an inherent check on the Secretary's authority - - the employee waiver. An employee does not waive his right to bring a section 16(b) action unless he or she agrees to do so after being fully informed of the consequences. Here, the employees were provided adequate notice and payment in full. Congress deemed that sufficient to protect employee rights.

C. The Secretary's Exercise of Discretion is Not Subject to Judicial Review.

Even in the absence of clear statutory language, the Court should not overturn a Wage-Hour supervised settlement and associated employee waiver. The Secretary's decision to settle is committed to the agency's nonreviewable discretion under Heckler v. Chaney, 470 U.S. 821 (1985).

The Supreme Court in Chaney, 470 U.S. at 831,837, held that an agency's non-enforcement decision is presumptively nonreviewable by the courts. The Court ruled that the Food and Drug Administration's refusal to take enforcement action under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 331, was not subject to judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. 501 et seq.[8]

---

[8] The presumption of agency discretion is not limited to cases brought under the APA. See Sierra Club v. Whitman, 268 F.3d 898 (9th Cir. 2001) (enforcement decisions are within EPA Administrator's discretion under the Clean Water Act).

The Court emphasized its long-standing recognition that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." Chaney, 470 U.S. at 831 (citing United States v. Batchelder, 442 U.S. 114, 123-24 (1979); United States v. Nixon, 418 U.S. 683 (1974); Vaca v. Sipes, 386 U.S. 171 (1967); Confiscation Cases, 7 Wall. 454 (1869)). The Court explained that such decisions, which encompass questions of agency resources and policy are best left to the agency:

> [A]n agency decision not to enforce often
> involves a complicated balancing of a number of
> factors which are peculiarly within its
> expertise. Thus, the agency must not only assess
> whether a violation has occurred, but whether
> agency resources are best spent on this violation
> or another, whether the agency is likely to
> succeed if it acts, whether the particular
> enforcement action requested best fits the
> agency's overall policies, and, indeed, whether
> the agency has enough resources to undertake the
> action at all. An agency generally cannot act
> against each technical violation of the statute
> it is charged with enforcing. The agency is far
> better equipped than the courts to deal with the
> many variables involved in the proper ordering of
> its priorities.

Chaney, 470 U.S. at 831-32. The Court noted that the general presumption of unreviewability of an agency's decision not to enforce may be rebutted where the substantive statute has provided guidelines for enforcement. Chaney, 470 U.S. at 832-33. The statutory

provision at issue in Chaney stated:  "The Secretary is authorized to conduct examinations and investigations . . . ." Chaney, 470 U.S. at 835, citing 21 U.S.C. 332 (emphasis added).  The Court found that "[t]he Act's enforcement provisions thus commit complete discretion to the Secretary to decide how and when they should be exercised." Id.

Similar statutory language governs the Secretary of Labor's supervision of the settlement with Hotels.Com:  "The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation . . . ." 29 U.S.C. 216(c) (emphasis added).  Courts have held that such "language of authorization" evinces Congress's intent to give the agency broad discretion to act.  See Sierra Club, 268 F.3d at 904.  The decision to enter into a settlement agreement is a legitimate exercise of the Secretary's nonreviewable enforcement discretion.  Indeed, the D.C. Circuit has held that an agency's decision to settle a case "is a paradigmatic instance of an agency exercising its presumptively nonreviewable enforcement discretion." Baltimore Gas and Electric Co. v. FERC, 252 F.3d 456, 460 (D.C. Cir. 2001) (FERC's decision to settle its enforcement action was within its nonreviewable

discretion) (citing New York State Dep't of Law v. FCC,
984 F.2d 1209, 1214 (D.C. Cir. 1993)) (FCC's decision to
settle an enforcement action "resembles . . . the
discretionary decision to initiate an action, which is
not reviewable under Chaney").  See also Schering Corp.
v. Heckler, 779 F.2d 683, 685 (D.C. Cir. 1985) (FDA's
settlement agreement not to pursue enforcement action for
a specified time period "falls squarely within the
confines of Chaney").  As the D.C. Circuit so aptly
stated:  "We have previously expressed hesitation to
position this court as supreme supervisor of Federal
agency enforcement, a role more effectively performed by
the Executive under congressional scrutiny."  Coker v.
Sullivan, 902 F.2d 84, 89 (D.C. Cir. 1990) (citing Antone
v. Block, 661 F.2d 230, 234 n.6 (D.C. Cir. 1981)).

The language and structure of the FLSA, as well as
the legislative history, provides the Secretary with
broad discretion to implement enforcement decisions,
including supervising the payment of back wages under a
settlement agreement pursuant to section 16(c).
Therefore, the authority of the Secretary to supervise
the payment of unpaid minimum wages or unpaid overtime
compensation under section 16(c) of the FLSA is not
subject to judicial review in this instance.

23

CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that this Court grant Hotels.Com's Motion for Partial Summary Judgment.


Respectfully submitted,

HOWARD M. RADZELY
Acting Solicitor of Labor

STEVEN J. MANDEL
Associate Solicitor

JONATHAN M. KRONHEIM
Counsel for Trial Litigation

MARY J. RIESER
Attorney
U.S. Department of Labor
200 Constitution Ave., NW, N 2716
Washington, DC  20210
(202) 693-5555

24



CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Amicus Curiae

Brief In Support of Motion for Partial Summary Judgment has

been sent via Federal Express on this _10th_ day of December

2003 to the following:


Jordan W. Cowman                James A. Jones
Julie Buffington                Jones & Associates, P.C.
Baker & McKenzie                5015 Tracy, Suite 100
2300 Trammell Crow Center       Dallas, TX  75205
2001 Ross Avenue
Dallas, TX  75201




MARY J. RIESER
Attorney

U.S. Department of Labor
200 Constitution Ave., N.W.
N 2716
Washington, D.C.  20210

25

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

ISABEL SOLIS and TRISHA       *
HOLLOWAY, on behalf of        *
themselves and on behalf of   *
all others similarly situated, *
                              *
          Plaintiffs,         *
                              * Civil File No.3:03CV-00618
v.                            *
                              *
HOTELS.COM TEXAS, INC.,       * [Wage/Hour – Fair Labor
DAVID LITMAN, ROBERT DIENER,  *  Standards Act]
And SANDRA D'ARCY,            * [Collective Action]
                              * [Jury Demanded]
          Defendants.         *
                              *
_____

**STATE OF  Texas**

**COUNTY OF   Hidalgo**

## DECLARATION OF CORANDO CARRIZALES

### 1.

I, Corando Carrizales declare pursuant to 28 U.S.C. 1746 under penalty of perjury that the following is true and correct:

### 2.

I have been employed by the U.S. Department of Labor ("DOL") as a Wage and Hour Investigator for six years.  I have conducted approximately 250 investigations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201, et seq.

3.

As a Wage and Hour Investigator, I have the authority to conduct investigations on behalf of the Secretary of Labor under the provisions of the FLSA. In October 2002, I conducted a limited investigation of Hotels.Com Texas, Inc., limiting my inquiry to non-exempt hourly employees. I had an initial conference on October 8, 2002 at the company's Pharr, Texas location with Center Director Ken Wilcox and Human Resources Manager Yolanda Champion. At that time I requested payroll records and an opportunity to interview employees.

4.

I conducted employee interviews and reviewed payroll records at the Pharr location on October 17 and 18, 2002. I identified FLSA violations, including failure to compensate employees for two 15-minute breaks, failure to compute the correct regular rate to include commissions and bonuses, and failure to pay the appropriate overtime. My review of the records did not reveal any intentional alteration of the payroll records by Hotels.Com. My interviews with employees did not elicit any complaints about a failure to pay for all hours worked, other than the failure to pay for the two 15-minute breaks.

5.

On October 31, 2002, I had a conference with Ken Wilcox to inform him of the results of DOL's investigation. I advised him of the FLSA violations and the actions that he needed to take to correct them.  I provided him with an Excel spreadsheet that I prepared with the assistance of Wage-Hour investigator Eden Ramirez under the supervision of Team Leader Fred De La Rosa using formulas to accurately calculate employees' back wages.  I explained that the regular rate should have included the half hour that was illegally deducted for the two 15-minute breaks, any hours paid at a different hourly rate, and any commissions and bonuses that may have been paid.  I instructed Hotels.Com to compute the unpaid overtime based on a 40-hour workweek. However, because Hotels.Com paid its employees on a bi-weekly basis, the Excel spreadsheet was set up to show the total back wages owed to employees for each 80-hour pay period.  The fluctuating work-week method of payment was not used in the computations.

6.

On November 12, 2002, I discussed the FLSA minimum wage and overtime requirements with Corporate Human Resources Director Stephanie Douglas.  I also advised her of the FLSA violations that I had identified and requested records for the entire period of the investigation for back

3

wage computations.   During the course of the investigation, I reviewed records covering a three-year period.

7.

On December 19, 2002, Wage-Hour received a letter from the law firm of Baker and McKenzie indicating that they represented Hotels.Com.  I apprised attorneys Julie Buffington and Jordan Cowman of the violations.  Hotels.Com agreed to comply with the FLSA and implement the necessary steps to avoid future violations.  Hotels.Com agreed to review its records and compute the back wages owed according to Wage-Hour's instructions and under Wage-Hour's supervision, utilizing the Excel spreadsheet template that I provided.

8.

On May 15, 2003, a final conference was held with Hotels.Com.  Attorneys Julie Buffington and Jordan Cowman and Hotels.Com Vice President John Dexter and Senior Vice President Doc Klotz represented Hotels.Com.  Team Leader Fred Dela Rosa and Investigators Eden Ramirez and I attended on behalf of Wage-Hour.  VP Klotz advised us that Hotels.Com was currently in compliance with the requirements of the FLSA and had implemented the payroll changes at all of its locations.  Hotels.Com produced spreadsheets containing back wage calculations for wages

4

owed to its non-exempt call center employees for the Pharr,
Dallas, and Fort Worth locations. Hotels.Com advised us
that it had conducted audits at its Dallas and Fort Worth
locations and were prepared to pay the back wages due.
Hotels.Com provided Wage-Hour with the underlying payroll
records. Wage-Hour Investigator Eden Ramirez, Team Leader
Fred De La Rosa, and I reviewed the back wage computations
and the underlying records for accuracy. Some of the
computations were found to contain errors. The employer
was shown the errors and advised on how to correct them.
Hotels.Com agreed to revise the computations as necessary.

9.

After Hotels.Com made corrections and Wage-Hour again
reviewed the computations, a final summary was accepted and
a back wage summary (form 56) was prepared and signed by
Hotels.Com Vice President John Dexter. Team Leader Fred De
La Rosa agreed that Wage-Hour would supervise payment of
the back wages at all three locations and approved the
following statement that was stamped on the back of every
check:  "Payment in full as determined by the Department of
Labor."  Hotels.Com agreed to provide cancelled checks as
proof of payment. Assistant District Director Alex Salaiz
approved Hotels.Com's use of waiver language from DOL Form
WH-58 in their receipt forms to ensure that the employees

5

would be properly notified of their rights.[1]  Form 58

provides (put in language from Form 58 or attach the

notice)  In addition, Hotels.Com included a notice with the

receipt, approved by Wage-Hour, stating that the check was

provided as payment in full.[2]

10.

In a letter dated May 23, 2002, Wage-Hour provided

Hotels.Com with final instructions for calculating and

disbursing back wages.  Under the agreement, Hotels.Com

would make full back wage payment by June 27, 2003.  Wage-

---

[1] The waiver notice in the Receipt For Payment of Lost or
Denied Wages, Employment Benefits, or Other Compensation
stated: **NOTICE TO EMPLOYEE UNDER THE FAIR LABOR STANDARDS
ACT** – Your acceptance of back wages due under the Fair
Labor Standards Act means that you have given up any right
you may have to bring suit for such back wages under
Section 16(b) of that Act.  Section 16(b) provides that an
employee may bring suit on his/her own behalf for unpaid
minimum wages and/or overtime compensation and an equal
amount as liquidated damages, plus attorneys' fees and
court costs.  Generally, a two-year statute of limitations
applies to the recovery of back wages.  Do not sign this
receipt unless you have actually received payment of the
back wages due.

[2] The Notice stated:  We have audited our records and
determined that we owe you the enclosed amount.  Please
read and sign the attached RECEIPT FOR PAYMENT OF LOST OR
DENIED WAGES for payment in full and return the signed form
to Hotels.com using the enclosed envelope.  For your
convenience, we have provided a copy of the RECEIPT for
your records.

Thank you for your prompt attention to this matter.

Hour instructed Hotels.Com to provide preliminary back wage payment evidence by July 4, 2003. Such evidence would include a report listing the employee's name, address, social security number, check number, and the gross and net amounts paid. Hotels.Com was advised to provide Wage-Hour with a list of any employees that had not been paid, including the employee's last known address, social security number, and attempts to locate the person. This list was required to be received at the Wage-Hour office by July 27, 2003. Wage-Hour instructed Hotels.Com to provide copies of the signed WH-58 receipt forms as they were returned. Wage-Hour advised that it would contact Hotels.Com by September 15, 2003 to identify any employees who could not be located. Finally, Wage-Hour told Hotels.Com to send a check made out to the Wage and Hour Division – Labor in the total Net amount due by September 25, 2003. In addition to this check, Hotels.Com was required to send copies of the front and back of the cancelled check for any person who was paid, but did not sign a receipt.

11.

On August 28, 2003, Hotels.Com sent Wage-Hour updated Excel spreadsheet reports containing complete back wage pay data, including information about employees who had not

7

received their checks.  In addition, Hotels.Com provided Wage-Hour with copies of all receipt forms and checks that had cleared since its previous report of July 25, 2003.

12.

Wage-Hour approved and supervised the payment of back overtime wages to Hotel.Com employees at three Texas locations – Pharr, Dallas, and Fort Worth.  Wage-Hour devoted considerable time and attention to the settlement, including reviewing records, developing a spread sheet, monitoring and reviewing computations, and supervising back wage payments for all of the Defendant's locations.  I personally worked on this case a total of approximately 150 hours.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.


Executed on  December 1, 2003  in McAllen, Texas.



Corando Carrizales

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

ISABEL SOLIS and TRISHA          *
HOLLOWAY, on behalf of           *
themselves and on behalf of      *
all others similarly situated,   *
                                 *
            Plaintiffs,          *
                                 * Civil File No.3:03CV-00618
v.                               *
                                 *
HOTELS.COM TEXAS, INC.,          * [Wage/Hour – Fair Labor
DAVID LITMAN, ROBERT DIENER,     *  Standards Act]
And SANDRA D'ARCY,               * [Collective Action]
                                 * [Jury Demanded]
            Defendants.          *
                                 *
_____

DECLARATION OF MICHAEL GINLEY

        I, Michael Ginley, declare pursuant to 28 U.S.C.

1746 under penalty of perjury that the following is true

and correct:

        1. I am the Director of the Office of Enforcement

Policy for the Wage and Hour Division, Employment Standards

Administration, U.S. Department of Labor.

        2.   As part of my duties I provide guidance,

information and direction to Wage and Hour Regional Offices

nationwide concerning the investigation and enforcement of

the Fair Labor Standards Act, as amended (FLSA), 29 U.S.C.

201 et seq.   I also supervise the promulgation of

procedures for the investigation of FLSA compliance actions

in the Wage and Hour Field Operations Handbook (FOH), which

serves as the standard for the conduct compliance actions under the FLSA.

3.    In fiscal year (FY) 2002 the Wage and Hour Division concluded more than 40,000 compliance actions and collected more than $175 million in back wages for employees, a 33% increase in back wages over FY 2001.

4.    The vast majority of compliance actions completed by the Department in which violations are found result in settlement agreements supervised by the Division pursuant to section 16(c) that provide employees the option of waiving their right to bring a private action under section 16(b) of the FLSA. 29 U.S.C. 216(b) and (c). These settlement agreements are a crucial component of the Division's enforcement program. The Division's ability to enter into such agreements depends on employers having confidence that waivers signed by employees under section 16(c) are binding.

5.    I have read the declaration of Investigator Corando Carrizales. Based upon the description of the compliance action in that declaration, the investigation of Hotels.com was consistent with the procedures of the Wage and Hour Division for the supervision of back wages payments under section 16(c) of the Fair Labor Standards Act. 29 U.S.C. 216(c).

6. Particularly, the use of the employee waiver provisions of the agreement entered into with Hotels.com is typical of cases in which the Wage and Hour Division supervises the payment of back wages. As noted by the Seventh Circuit in Walton v. United Consumers Club Inc., 786 F.2d 303 (7th Cir. 1986), the Wage and Hour Division does indeed distinguish among settlements. It may choose whether a given agreement for the payment of back wages will be supervised in accordance with section 16(c), and when it will not. When the Division believes that it has reached a settlement that represents the back wages due the employees (as in this case), and chooses to supervise the agreement pursuant to section 16(c), it arranges for the presentation of waiver agreements to the employees for signature. A Form WH-58, the Division's form receipt, may be used to inform employees of their rights under section 16(b) of the FLSA. The employee's signature on that form serves to waive those rights.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___December 9___, 2003 in Washington, D.C.

_____
Michael Ginley

3